461 So.2d 458 (1984)
John N. RICO and Mary B. Rico
v.
Patricia A. VANGUNDY, Allstate Insurance Company and the Parish of Jefferson.
No. 84-CA-176.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1984.
*460 Nelson J. Cantrelle, Jr., Gretna, for plaintiff-appellee.
James L. Donovan, Jr., Donovan & Lawler, Metairie, for defendant-appellant.
Before KLIEBERT, BOWES and CURRAULT, JJ.
CURRAULT, Judge.
This appeal arises from a judgment in favor of plaintiffs, John N. and Mary B. Rico, and against defendants, Patricia Vangundy and her insurer, Allstate Insurance Company, for damages sustained in an automobile collision.
The facts reveal that on May 16, 1980, plaintiff, Mary B. Rico, was travelling on Lapalco Boulevard toward Marrero, Louisiana at approximately 35 miles per hour. About two blocks from the controlled intersection at Lapalco Boulevard and Manhattan Boulevard, Mrs. Rico noticed that the signal lights were inoperative and thus slowed her speed to 25-30 miles per hour. Plaintiff entered the intersection, maintaining the slower speed in conjunction with the traffic flow; but, nevertheless, collided with defendant's vehicle which was making a left turn across the intersection.
Defendant who had been travelling on Lapalco Boulevard in the same direction as plaintiff missed a right turn at Manhattan Boulevard. As a result, she proceeded further along until she was able to make a U-turn. When defendant arrived at the intersection of Lapalco and Manhattan, she attempted to make a left turn, crossed plaintiff's path and was struck by plaintiff's vehicle. Defendant was also aware that the traffic signals were inoperative.
As a result of property damages and personal injuries sustained in the collision, plaintiff filed suit on September 12, 1980 for damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000). On October 2, 1980, defendants filed an answer, reconventional demand, third-party demand and request for trial by jury. The jury order was signed on October 3, 1980 and bond was timely posted. At that time, LSA-C.C.P. Article 1733 allowed civil jury trials in cases in which the amount in dispute was One Thousand Dollars ($1,000) or more.
Trial was held on January 17, 1984. Prior to commencement of the proceedings, plaintiff orally requested and was granted permission to reduce the demand, by amendment, to Five Thousand Dollars ($5,000). As a consequence, the trial judge struck the jury on the authority of LSA-C. C.P. Article 1732(1), amended and renumbered in 1983, which limits the right to a civil jury trial to cases where the amount in dispute exceeds $5,000. Defendant objected on the basis that on the date the jury order was signed, the limitation in the amount in dispute was One Thousand Dollars ($1,000) under prior LSA-C.C.P. Article 1733. Over defendant's objection to the court's action in striking the jury, the case was heard on the merits. On January 20, 1984, judgment was rendered in plaintiff's favor in the amount of Five Thousand Dollars ($5,000) which included the stipulated amount of Four Thousand, Six Hundred Twenty Dollars and Fifty-Three Cents ($4,620.53) in special damages for medical expenses, lost wages and property damages.
Defendants subsequently perfected this appeal alleging the following as error:
that (1) the trial judge erred in giving retroactive effect to Article 1732(1) of the Louisiana Code of Civil Procedure; and that
(2) the trial judge erred in failing to find plaintiff, Mary P. Rico, contributorily negligent in this matter and thereby barring her recovery from the defendants.
Appellants contend on the first assignment of error that in October, 1980, they were vested with a fundamental right under *461 the then existing Article 1733 of the Louisiana Code of Civil Procedure, and that a subsequent amendment to said article in August of 1983 cannot divest them of a jury trial.
The right to a trial by jury, in civil matters, is granted with limitations by legislative enactment, and is found in the Louisiana Code of Civil Procedure Articles 1731 et seq. In 1983, the section was reorganized; however LSA-C.C.P. Article 1731 which provides the right to a jury trial in civil actions remained the same in substance.[1] New LSA-C.C.P. Article 1731, which provides for the right, states:
A. Except as limited by Article 1732, the right of trial by jury is recognized.
B. The nature and amount of the principal demand shall determine whether any issue in the principal or incidental demand is triable by jury.
The article which defines the limitations on the right was amended, as well as renumbered in 1983, to provide the following:
Art. 1732. Limitation upon jury trials
A trial by jury shall not be available in:
(1) A suit where the amount in dispute does not exceed five thousand dollars exclusive of interest and costs.
(2) A suit on an unconditional obligation to pay a specific sum of money, unless the defense thereto is forgery, fraud, error, want or failure of consideration.
(3) A summary, executory, probate, partition, mandamus, habeas corpus, quo warranto, injunction, concursus, worker's compensation, emancipation, tutorship, interdiction, curatorship, legitimacy, filiation, separation from bed and board, annulment of marriage, or divorce proceeding.
(4) A proceeding to determine custody, visitation, alimony, or child support.
(5) A proceeding to review an action by an administrative or municipal body.
(6) All cases where a jury trial is specifically denied by law.
The amendment, for our purposes, reflects that the prior article (1733) limited the right to a trial by jury in civil matters to cases where the amount in dispute was One Thousand Dollars ($1,000) or more. Under Article 1731, the amount in dispute determines the right, but as noted in the official comments, it is the amount demanded in good faith, not simply the amount of plaintiff's demand. In further explanation of the changes made by the legislature, the official comments note:
(a) This article is renumbered due to a rearrangement of the articles on jury trial by Acts 1983 No. 534. The first two articles1731 and 1732deal with the right to trial by jury and the limitations on that right. The subsequent articles of the section provide the procedures for implementing that right.
(b) Paragraph (1) increases the minimum amount necessary in order to have a trial by jury from one thousand dollars to five thousand dollars. This increase is appropriate in light of the increasing cost of jury trials and is in keeping with the expanded jurisdiction of city and parish courts in which there is no right to a jury trial. See Arts. 4842, 4843, and 4871.
Appellants argue that the trial court's action in striking the jury order in effect applied the new law retroactively in violation of LSA-C.C. Article 8 which generally forbids the application of laws in a retroactive manner. It is further asserted that even if this article is deemed an exception as procedural law, the court erred in that procedural laws which disturb a vested right cannot be applied retroactively. On the other hand, appellee argues that the good faith amount in dispute determines the right, and that on the day of trial, that good faith demand totalled Five Thousand Dollars ($5,000). Consequently, appellee asserts, the trial court did not apply a law retroactively, but properly applied LSA-C. C.P. 1731, striking the jury based on the demand.
*462 While the jurisprudence does not address the right to jury in conjunction with our particular facts, the general right to a civil trial by jury has been held to be fundamental and the courts are urged to indulge a presumption against waiver, loss or forfeiture. Champagne v. American Southern Insurance Company, 295 So.2d 437 (La.1974); Duplantis v. U.S. Fidelity and Guaranty Insurance Corp., 342 So.2d 1142 (La.App. 1st Cir.1977). The litigant, it is held, may be deprived of the right only by express exceptions provided by the legislature. Jones v. City of Kenner, 338 So.2d 606 (La.1976); Ruston State Bank & Trust Co. v. Theodus, 367 So.2d 899 (La. App. 2d Cir.1979). In doubtful circumstances, a liberal construction in favor of the jury trial is favored in law. Duplantis, supra; Arrington v. McCarty, 136 So.2d 119 (La.App. 3d Cir.1962).
Generally, a law can prescribe only for the future. LSA-C.C. art. 8. However, the jurisprudence provides that the rule applies solely to substantive law as distinguished from merely procedural, interpretive, curative or remedial law. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978); Miller v. Board of Directors of Fireman's Pension and Relief Fund of City of Lake Charles, 378 So.2d 973 (La.App. 3d Cir.1979), writ denied 379 So.2d 1104 (La.1980); Orleans Parish School Board v. Pittman Construction Co., 372 So.2d 717 (La.App. 4th Cir.1979). This jurisprudential rule is subject to the exception that procedural, interpretive, curative or remedial laws are not accorded retroactive effect when to do so would operate to unconstitutionally disturb vested rights. Lott v. Haley, 370 So.2d 521 (La.1979). A right is vested when,
"the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit or contingent interest in property ... does not constitute a vested right. Tennant v. Russell, 214 La. 1046, 39 So.2d 726, 728 (1949); Draughn v. Mart, 411 So.2d 1188 (La.App. 4th Cir.1982)."
Keeping these principles in mind, we nonetheless recognize that plaintiff has a right to amend the petition with leave of court after an answer is filed, to alter the substance or the demand. LSA-C.C.P. 1151. Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267 (La. 1981). In this regard, the trial judge herein struck the jury after allowing appellee to amend the petition as to the demand on the day of trial.
After our review, we are of the opinion that the facts do not support appellant's contention that the trial court's actions violated appellant's fundamental right to a jury trial. The right granted by the legislature with express limitations is contingent upon the good faith amount in dispute, not simply the amount demanded. (Revised comments LSA-C.C.P. 1732, paragraph B). Thus, the right may rise or fall depending upon the good faith actions of plaintiff in making his demand whether it remains constant or changes upward or downward due to factors subsequently discovered. An original action for damages below the minimum might later be amended to a higher amount so as to cause the right to a jury trial to vest. A later amendment to reduce should not be treated differently. The fact that the minimum amounts were raised by the legislature is not the primary factor in appellant's loss of the right. Under any circumstances, it is plaintiff's good faith actions that determine either party's right to a trial by jury, and we are convinced that the intent of the legislature is best served by this interpretation. As the Revised Comments note under LSA-C.C.P. Article 1732, the increase in the minimum amount is due to the rising increase in jury costs (as well as consistency with the expansion of jurisdiction of city and parish courts). The costs of the jury are those in existence at time of trial.
Consequently, we hold that the trial court did not err under these facts in striking *463 the jury at the time of trial based on the amended demand.
Appellant's second assignment of error alleges that the trial court erred in failing to find appellee contributorily negligent, thus barring her right to recovery.[2]
Appellant cites Soprano v. State Farm Mutual Automobile Insurance Company, 246 La. 524, 165 So.2d 308 (1964) to support a finding of contributory negligence on the part of appellee.
Generally, the duty of drivers entering uncontrolled intersections is governed by LSA-R.S. 32:121 which grants the right of way to the vehicle approaching from the right. Under LSA-R.S. 32:122, a high degree of care is placed on left turning vehicles and the left-turning driver is required to yield the right of way to oncoming traffic. In the Soprano case, however, the Louisiana Supreme Court held that the statutory right of way provided in LSA-R.S. 32:121 is inapplicable to situations involving three phase, four-sided semaphore signals, in place, but temporarily out of order. The court then delineated the rights and duties under those circumstances as follows:
"A non-functioning, four-sided semaphore signal device at an intersection in plain view of an ordinary observant motorist imposes a duty of extreme caution on any motorist approaching or entering that intersection. To enter such an intersection without slowing down or stopping to ascertain whether the crossing can be negotiated in safety is imprudent and constitutes negligence in legal contemplation." At page 312.
Following the Soprano rationale, in Orazio v. Durel, 407 So.2d 75 (La.App. 4th Cir.1981), the Fourth Circuit Court of Appeal found LSA-R.S. 32:122 likewise inapplicable, and instead applied the standard of care as enunciated in Soprano.
The Third Circuit Court of Appeal, on the other hand, in Gibson v. Fisher, 401 So.2d 565 (La.App. 3d Cir.1981) resolved a case under similar facts on the basis of LSA-R.S. 32:122 and the jurisprudence interpreting the statute, as opposed to applying the Soprano test.
After our review of the applicable law, we conclude, as did the Fourth Circuit Court, that the rationale of the Soprano case applies to LSA-R.S. 32:122. As LSA-R.S. 32:122 is inapplicable, the facts herein will be scrutinized under the standard of care enunciated in Soprano.
The facts herein indicate that both parties knew the traffic signal device was inoperative. The weather was clear and the collision occurred in daylight. Appellant passed through the intersection, made a U-turn and proceeded back to the intersection, stopped and then attempted a left turn on Manhattan Boulevard. She was a manager of K-Mart at the time and was coming from the store in Gretna to go to the one in Marrero. Appellant testified that appellee was travelling in the right hand lane of oncoming traffic. She stated her vision was unobstructed, but the investigating officer and appellee husband who arrived later both indicated she told him a truck to her right partially obscured her vision to the westbound traffic.
Appellee, on the other hand, asserted that she was in the left oncoming lane going westward toward the Lapalco Bridge. She testified that about two blocks from the intersection she noticed that the signal lights were inoperative, and thus slowed her speed to 25-30 miles per hour. While not able to state she saw appellant's car, specifically, in the lane turning into Manhattan Boulevard, she said she was aware of several vehicles stopped preparing to make the left hand turn. She stated she braked as appellant crossed her path but was unable to stop or take evasive action. Appellee further testified that appellant told her after the accident that she (appellant) had the green light and had the right of way.
*464 Douglas Robert, employed by Jefferson Parish, was qualified as an expert in traffic engineering. He testified that Lapalco Boulevard was considered the major thoroughfare for signal timing purposes as it received the most volume of traffic which is the factor determining classification of a street as major or minor.
Applying the standard of review of facts set forth in Arceneaux v. Domingue, 365 So.2d 1330 (La.1979), and considering the legal duty set forth in Soprano, we are of the opinion that the trial court was not manifestly erroneous in finding appellant solely liable. Appellee herein exercised due care in approaching the intersection, acted reasonably in moving with the flow of traffic, observed what she should have observed and had a right to assume that vehicles stopped in preparation for a turn which would cross her path would not suddenly proceed without warning. Consequently, we hold that appellee was not contributorily negligent as she exercised a proper degree of caution under the circumstances of this case.
After a review of the law and evidence, therefore, we hereby affirm the trial court judgment. All costs of this appeal are to be paid by appellant.
AFFIRMED.
NOTES
[1] In LSA-C.C.P. art. 1731, a change in the cross reference to the limitation article was made since that article was renumbered from Article 1733 to Article 1732.
[2] The accident occurred prior to August 1, 1980, the effective date of the amendment to LSA-C.C. Article 2323, providing for comparative negligence in this state.