| | | |
|---|---|---|
| CYNTHIA BRYAN, AUBRY BRYAN, JR., AUNYA BRYAN, AND GLENDA BRYAN | * | NO. 2024-C-0694 |
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION AS THE GUARANTOR OF THE INSOLVENT INSURANCE COMPANY, SOUTHERN FIDELITY INSURANCE COMPANY | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-09852, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *
(Court composed of Chief Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge Dale N. Atkins, Judge Nakisha Ervin-Knott)

*ERVIN-KNOTT, J., DISSENTS AND ASSIGNS REASONS*


Christy L. McMannen
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, Louisiana 70130

      COUNSEL FOR DEFENDANT/RELATOR


Patrick G. Kehoe, Jr.
Rebecca Kehoe Thompson
PATRICK G. KEHOE, JR., APLC
3524 Canal Street
New Orleans, Louisiana 70119

      COUNSEL FOR PLAINTIFFS/RESPONDENTS


              **WRIT GRANTED; RELIEF DENIED**
                       **MARCH 11, 2025**

This is a property insurance dispute arising out of damage sustained in Hurricane Ida. Defendant/relator, Louisiana Insurance Guaranty Association ("LIGA"), seeks supervisory review of the district court's October 7, 2024 judgment denying LIGA's exception of prescription. For the reasons that follow, we grant the writ but deny relief.

Plaintiffs/respondents, Cynthia Bryan, Aubry Bryan, Jr., Aunya Bryan, and Glenda Bryan Brooks (collectively the "Bryans"), own property that was damaged when Hurricane Ida made landfall on August 29, 2021. At the time of Hurricane Ida's landfall, the Bryans' property was insured by Southern Fidelity Insurance Company ("Southern Fidelity).[1] On June 15, 2022, a Florida court declared Southern Fidelity insolvent. Prior to being declared insolvent, Southern Fidelity had issued a partial tender of payment to the Bryans for their Hurricane Ida damages. On August 28, 2023, the Bryans filed *a Petition for Damages and Breach of Contract* seeking to recoup losses related to Hurricane Ida damage. The

---

[1] The Bryans' property was previously insured by Capitol Preferred Insurance Company, Inc. ("Capitol"). Capitol merged with Southern Fidelity on September 8, 2020.

1

Bryans named Louisiana Citizens Property Insurance Corporation ("Louisiana Citizens") as the defendant, alleging that Louisiana Citizens assumed the debt of Southern Fidelity. On October 24, 2023, the Bryans filed an amended petition, replacing Louisiana Citizens with LIGA as defendant. LIGA responded by filing a peremptory exception of prescription. The district court heard and denied the exception in open court on September 26, 2024. The district court's ruling was memorialized in a judgment dated October 7, 2024. LIGA brought the instant application for supervisory writs.[2]

The following standard of review and legal principles apply. Ordinarily, when evidence is introduced at the hearing of an exception of prescription, the appellate court reviews the district court's factual findings under the manifest error-clearly wrong standard of review. *Wells Fargo Fin. La., Inc. v. Galloway*, 17-0413, p. 8 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 800 (citations omitted). However, as occurred here, if no dispute exists as to the material facts, only the determination of a question of law, the district court reviews the ruling *de novo*,

---

[2] LIGA raised three assignments of error:

1. The District Court erred in denying LIGA's Peremptory Exception of Prescription because Plaintiffs have not established that a relationship between LIGA and Louisiana Citizens existed such that the claims against LIGA in the Amended Petition related back to those asserted against Louisiana Citizens in the Original Petition.

2. The District Court erred in denying LIGA's Peremptory Exception of Prescription because the facts and law clearly establish that a two-year, and not a ten-year, prescriptive period applied to Plaintiffs' claims against LIGA.

3. The District Court erred in denying LIGA's Peremptory Exception of Prescription because the law is clear that prescription was not interrupted by the Order of Insolvency or Southern Fidelity's prior payments.

without giving any deference to the lower court's legal conclusion. *Id.* "As a general rule, the party pleading prescription bears the burden of proving the plaintiff's claim has prescribed; however, when a claim has prescribed on its face, the burden shifts to the plaintiff to demonstrate prescription was suspended or interrupted." *Lopez v. House of Faith Non-Denomination Ministries*, 09-1147, p. 3 (La. App. 4 Cir. 1/13/10), 29 So.3d 680, 681 (citation omitted). "[W]hen the plaintiff alleges specific dates [in the petition], it can be determined whether the petition is prescribed on its face." *Galloway*, 17-0413, p. 9, 231 So.3d at 801.

We find that the district court properly denied LIGA's exception of prescription. For the reasons that follow, the lower court correctly concluded that the claims asserted by the Bryans against LIGA had not yet prescribed at the time they filed their amended petition on October 24, 2023.

Louisiana Revised Statute 22:868(B) provides a general rule that insurance carriers cannot limit first party claims to a period less than twenty-four months, or two years, from the date of loss. The Southern Fidelity policy issued to the Bryans contained a provision that all claims must be brought within two years after the date of loss. The time limitation under La. R.S. 22:868(B) is prescriptive, not preemptive, meaning that it may be suspended or interrupted. *See, e.g., Taranto v. La. Citizens Prop. Ins. Corp.*, 09-0413, p. 7 (La. App. 4 Cir. 12/16/09), 28 So.3d 543, 548 (interpreting former La. R.S. 22:629, renumbered as La. R.S. 22:868 by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009).

3

The "LIGA Law" found in La. R.S. 22:2051 *et seq.* does not contain any particular prescriptive period. LIGA is obligated to pay covered claims of insolvent member insurers that arose prior to that member insurer's insolvency. *See* La. R.S. 22:2052; *see also* La. R.S. 22:2058. LIGA is limited by statute to only provide coverage for "covered claims" as set forth in La. R.S. 22:2055(6). *Id.* Generally, a covered claim is an unpaid claim that is within the coverage of an insolvent insurer's policy. La. R.S. 22:2055(6)(a). The policy of the insolvent insurer dictates the terms of the claim's coverage. *See* La. R.S. 22:2053(B). In accordance with the Southern Fidelity policy's terms, we find that a two-year prescriptive period applied to the Bryans' claims against LIGA.

The question this Court must resolve is the date on which the two-year prescriptive period began to run. LIGA contends that date was the date of loss, Hurricane Ida, on August 29, 2021. The Bryans argue that prescription did not begin to run until the date of the order of insolvency, June 15, 2022. We agree with the Bryans that the order of insolvency triggered the relevant prescriptive period, and under the facts before us, the prescriptive period began to run on June 15, 2022.

We acknowledge that "[p]rescriptive rules 'are designed to prevent old and stale claims from being prosecuted.'" *Del Vescovo v. Air & Liquid Sys. Corp.*, 23-0116, p. 28 (La. App. 4 Cir. 11/15/23), 377 So.3d 759, 778 (quoting *Slaughter v. Cent. United Life Ins. Co.*, 51,961, p. 6 (La. App. 2 Cir. 6/27/18), 250 So.3d 1160, 1164). Nonetheless, we note the longstanding, fundamental principle that

"prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it." *Bailey v. Khoury*, 04-0620, 04-0647, 04-0684, p. 9 (La. 1/20/05), 891 So.2d 1268, 1275 (citing *Bouterie v. Crane*, 616 So.2d 657, 660 (La. 1993)). For this reason, Louisiana courts abide by the principle that "if there are two possible constructions of a prescription statute, one that would maintain the cause of action and one that would bar the cause of action, the cause of action should be maintained." *Huth v. Pickering*, 07-181, p. 4 (La. App. 5 Cir. 8/28/07), 966 So.2d 652, 654 (citing *Lima v. Schmidt*, 595 So.2d 624, 629 (La. 1992)); *Carter v. Haygood*, 04-0646, p. 10 (La. 1/19/05), 892 So.2d 1261, 1268.

As the Louisiana Supreme Court has explained, prescriptive restrictions are "rooted in the recognition that a prescriptive period is a time limitation on the exercise of a right of action. . . ." *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992). However, "[p]rescription cannot run against a cause of action . . . while that cause of action cannot be exercised." *Bailey*, 04-0620, 04-0647, 04-0684, p. 9, 891 So.2d at 1275 (quoting *Wilkinson v. Wilkinson*, 323 So.2d 120, 125 (La. 1975)). That is, one must possess the right of action against the other party for prescription to commence. *See Born v. City of Slidell*, 15-0136, p. 10 (La. 10/14/15), 180 So.3d 1227, 1233 (explaining "that the running of prescription on [a] plaintiff's claim [does] not begin to run until the plaintiff [can] 'act on his [or her] claim'" (citing *Ledoux v. City of Baton Rouge*, 99-2061, pp. 5-6 (La. 2/29/00), 755 So.2d 877, 880)). It is not until that time that the "cause of action arises"

against the other party thereby rendering "judicial enforcement . . . possible." *Born*, 15-0136, p. 9, 180 So.3d at 1233 (quoting La. C.C. art. 3495, comment (b)).

Under our reading of prescription jurisprudence regarding LIGA, an insured's right to sue LIGA does not arise until the date the prior insurer is deemed insolvent. We find particularly instructive the policy considerations expressed in *Rey v. Guidry*, 618 So.2d 425, 426 (La. App. 5th Cir. 1993). In *Rey*, after an automobile accident, Matthew Rey ("Mr. Rey") filed a tort lawsuit against the other driver; the other driver's liability insurer, Dixie Lloyds Insurance Company ("Dixie Lloyds"); and Allstate Insurance Company, Mr. Rey's uninsured motorist ("UM") carrier. *Id.* Subsequent to Mr. Rey filing his lawsuit, Dixie Lloyds became insolvent, and Mr. Rey amended his lawsuit to name LIGA instead of Dixie Lloyds. *Id.* The sole issue before the Louisiana Fifth Circuit Court of Appeal ("Fifth Circuit") was whether LIGA, in lieu of Dixie Lloyds, would be primary or whether Mr. Rey's UM carrier, Allstate, would have primary coverage. *Id.* Though the issue before the *Rey* court (which insurer would be primary) differed somewhat from the matter *sub judice* (whether the Bryans' claims were prescribed at the time they filed their amended petition), we find certain reasoning in *Rey* analogous and applicable to the present case.

Specifically, the Fifth Circuit considered when Mr. Rey had a vested right to proceed against LIGA, and explained that a right becomes vested when:

> the right to enjoyment, present, or perspective, has become property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of any contingency, and a

> mere expectancy of future benefit or contingent interest in property . . . does not constitute a vested right.

*Rey*, 618 So.2d at 427 (alteration in original) (quoting *Rico v. Vangundy*, 461 So.2d 458, 462 (La. App. 5th Cir. 1984)). Based on the foregoing definition, the Fifth Circuit reasoned that "any right [Mr.] Rey may have had against LIGA on the date of the [automobile] accident was conditional, contingent that Dixie Lloyds be liquidated before a claim against LIGA would be viable." *Id.* Thus, the Fifth Circuit concluded that the date of Dixie Lloyds' insolvency constituted the date Mr. Rey was vested with a right to proceed against LIGA and the date when LIGA first had an obligation with respect to paying his claim. *Id.* Essentially, the Fifth Circuit concluded that the date of liquidation determined liability. *Id.*

Similarly, we conclude that any right the Bryans had to proceed against LIGA at the time of loss (August 29, 2021) was merely conditional and contingent upon Southern Fidelity ultimately becoming insolvent. When Southern Fidelity did in fact become insolvent on June 15, 2022, this became the first day that the Bryans had a vested right to proceed against LIGA and the first date that LIGA had an obligation with respect to paying their claim. Thus, from August 29, 2021, until June 15, 2022, the Bryans did not have a cause of action against LIGA and any attempt to seek judicial enforcement of a purported cause of action during this timeframe would have been premature and futile. Just as the Fifth Circuit equated the date of liquidation with the liability determination in *Rey*, we find that the date of Southern Fidelity's insolvency — June 15, 2022 — is the date the Bryans' prescriptive period with respect to LIGA commenced. Prior to that day, the Bryans had no right to proceed against LIGA. In arriving at this determination, we are mindful of the Louisiana Supreme Court's statement that "one cannot reproach the

creditor for not having acted at a time when he did not have the right to do so."
*Born*, 15-0136, p. 9, 180 So.3d at 1233 (quoting La. C.C. art. 3495, comment (b)). As prescription did not commence until June 15, 2022, the Bryans filed their October 24, 2023 amended petition naming LIGA well within the applicable two-year prescriptive period.

Moreover, we must recognize the problematic and unfair results that following LIGA's argument would yield. As the Louisiana Supreme Court explained, to hold that prescription commences to run before the petitioner has the right to judicial enforcement means "that the right [could] be lost before it could [even] be exercised, which would be as unjust as absurd." *Born*, 15-0136, p. 10, 180 So.3d at 1233 (quoting La. C.C. art. 3495, comment (b)). We find the Bryans' argument persuasive – that if prescription against LIGA were to begin to run on the date of loss of August 29, 2021, but no order of insolvency was entered until August 28, 2023, a claim against LIGA could be actionable for only one day. The effect of LIGA's argument, however, where no claim can proceed against LIGA until the original insurer is declared insolvent, is the prescriptive equivalent of a sliding scale, dependent on the uncertain timing of a foreign court's order, instead of a firm, reasonable, and certain deadline. Moreover, under that scenario where there is any delay in giving notice to plaintiffs of the insolvency, plaintiffs would find themselves in an unfortunate position: their original insurer would be insolvent, and their right to proceed against LIGA would already be prescribed.[3] Such plaintiffs would have lost their right to proceed against LIGA before they

---

[3] Given these policy considerations, we decline to follow *Green v. Maison Ins. Co.*, 24-297 (La. App. 5 Cir. 9/4/24), 398 So.3d 231, which determined that prescription began to run against LIGA on the date that Hurricane Ida made landfall in Louisiana and did not consider any argument that the order of insolvency initiated the running of prescription.

8

could even exercise the aforesaid right, which, as the Louisiana Supreme Court put it, "would be as unjust as absurd." *See Born*, 15-0136, p. 10, 180 So.3d at 1233 (quoting La. C.C. art. 3495, comment (b)).

The parties' arguments further demonstrate two different constructions of the relevant prescriptive period. According to LIGA, the date of loss was the date prescription commenced against it, thereby barring the Bryans' action. The Bryans argue that the date of insolvency was the date prescription commenced against LIGA, thereby maintaining their action. Given the facts of this case and the longstanding, fundamental principle that "[p]rescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it," we find that statutory construction must promote maintaining the Bryans' cause of action. *Bailey*, 04-0620, 04-0647, 04-0684, p. 9, 891 So.2d at 1275 (citing *Bouterie*, 616 So.2d at 660).

Accordingly, for the foregoing reasons, we uphold the ruling of the district court denying the exception of prescription. We, therefore, grant the writ but deny relief.

**WRIT GRANTED; RELIEF DENIED**